LEE TRAN & LIANG LLP
Enoch H. Liang (SBN 212324)
enoch.liang@ltlattorneys.com
Heather F. Auyang (SBN 191776)
heather.auyang@ltlattorneys.com
Lisa J. Chin (SBN 259793)
lisa.chin@ltlattorneys.com
601 South Gateway Blvd., Suite 1010
South San Francisco, CA 94080
Telephone: (650) 422-2130
Facsimile: (213) 612-3773

Attorneys for Defendant Symmetricom, Inc.

UNITED STATES DISTRICT COURT

FOR NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TODD S. GLASSEY<br><br>and<br><br>MICHAEL E. MCNEIL<br><br>Plaintiffs,<br><br>v.<br><br>SYMMETRICOM, INC.,<br><br>Defendant. | Case No. 3:13-cv-04662 (NC)<br><br>**DEFENDANT SYMMETRICOM, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>[REQUEST FOR JUDICIAL NOTICE AND [PROPOSED] ORDER FILED CONCURRENTLY]<br><br>Judge: The Honorable Nathanael Cousins<br>Date: March 19, 2014<br>Time: 10:00 AM<br>Dept: Courtroom A, 15th Floor |

# NOTICE OF MOTION

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD**: PLEASE TAKE NOTICE THAT on March 19, 2014, at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom A of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, 15th Floor, San Francisco, California, Defendant Symmetricom, Inc. ("Defendant" and/or "Symmetricom") will and hereby does move this Court to dismiss all Causes of Action in Plaintiffs Todd S. Glassey and Michael E. McNeil's (collectively "Plaintiffs") Complaint in this matter pursuant to Federal Rule of Civil Procedure 12(b)(6), with prejudice.

This Motion is brought pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that:

(1) Plaintiffs' claims in the Complaint are facially barred by the applicable statutes of limitations; and

(2) Plaintiffs' claims fail to state a claim for which relief may be granted.

This Motion to Dismiss is based upon this Notice of Motion, the supporting Memorandum of Points and Authorities, the accompanying Request for Judicial Notice and any exhibits attached thereto, all pleadings and records in this case, all matters of which the Court may take judicial notice, and such oral argument and evidence that may be allowed by the Court at the time of the hearing on this Motion.

Dated:  January 29, 2014

Respectfully submitted,

LEE TRAN & LIANG LLP

By:  */s/ Enoch H. Liang*
     Enoch H. Liang
     *Attorneys for Defendant*
     *SYMMETRICOM, INC.*

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................1

II. FACTUAL BACKGROUND ..............................................................................................2

    A. Relationship Between The Parties ...............................................................................3

        1. Digital Delivery, Inc. ("DDI") and Plaintiffs ..........................................................3

        2. Symmetricom, Datum, and Plaintiffs .....................................................................3

    B. Alleged Breaches Of The 1999 Controlling Access Settlement By The '629 Patent, Which Issued In 2002 ....................................................................................................3

        1. The Controlling Access Settlement ........................................................................3

        2. Datum's Alleged Breaches of the Controlling Access Settlement ..........................4

        3. Symmetricom, Datum, and the '629 Patent ............................................................4

    C. The Plaintiffs Initiate State Court Proceedings In 2009 .................................................5

    D. The Federal Complaint ..................................................................................................6

III. ARGUMENT .......................................................................................................................6

    A. Legal Standard ...............................................................................................................6

    B. Plaintiffs' Claims Are Barred By The Applicable Statutes Of Limitations ...................6

    C. All Of Plaintiffs' Causes Of Action Fail To State A Claim Upon Which Relief Can Be Granted And Should Be Dismissed ................................................................................9

        1. Counts One, Two and Five: Plaintiffs' Breach of Contract Claims .......................10

        2. Count Three: Plaintiffs' Unjust Enrichment Claim ...............................................11

        3. Count Four: Plaintiffs' Tortious Interference Claim .............................................12

    D. Dismissal Should Be With Prejudice As Amendment Would Be Futile .....................13

IV. CONCLUSION .................................................................................................................14

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................. 9, 10

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................... 9, 10

*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336 (9th Cir. 1996) ......................................................... 6

*California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831 (9th Cir. 2004) ..................................... 7

*Clegg v. Cult Awareness Network*, 18 F.3d 752 (9th Cir. 1994) .................................................. 10

*Conley v. Gibson*, 355 U.S. 41 (1957) ........................................................................................... 6

*Duetsche v. Turner Corp.*, 324 F. 3d 692 (9th Cir. 2003) ............................................................ 13

*Gen. Bedding Corp. v. Echevarria*, 947 F.2d 1395 (9th Cir. 1991) .............................................. 7

*Hafiz v. Greenpoint Mortgage Funding,* 652 F. Supp. 2d 1039 (N.D. Cal. 2009) ........................ 11

*IBM Corp. v. Zachariades*, 70 F.3d 1278 (9th Cir. 1995) ............................................................. 8

*IBM Corp. v. Zachariades*, No. C 91-20419-JW, 1993 WL 443409 (N.D. Cal. Oct. 27,
    1993), *affirmed in relevant part by* 70 F.3d 1278 (9th Cir. 1995) ................................... 8, 9

*In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705 (N.D. Cal. 2011) ......................................... 12

*In re Toyota Motor Corp. Un. Accel. Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F.
    Supp. 2d 1145 (C.D. Cal. 2010) ..................................................................................... 11

*Jablon v. Dean Witter & Co.*, 614 F.2d 677 (9th Cir. 1980) ..................................................... 7, 9

*Lipton v. Pathogenesis Corp.*, 284 F.3d 1027 (9th Cir. 2002) ..................................................... 13

*Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012) .................................................. 12

*Lukovsky v. Cty. & Cnty. of San Francisco*, 535 F.3d 1044 (9th Cir. 2008) .................................. 7

*Mack v. South Bay Beer Distrib.*, 798 F.2d 1279 (9th Cir. 1986) .................................................. 6

*McAfee v. Francis*, No. 11-CV-00821-LHK, 2011 WL 3293759 (N.D. Cal. Aug. 1, 2011) ......... 11

*Mendoza v. Countrywide Home Loans, Inc.*, No. C-09-3648 SC, 2009 WL 4706350 (N.D.
    Cal. Dec. 2, 2009) ........................................................................................................... 11

*Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646 (9th Cir. 1988) ................................................. 5, 6

*Nichols v. Greenpoint Mortgage Funding, Inc.,* No. 08-750-DOC, 2008 WL 3891126
    (C.D. Cal. Aug. 19, 2008) ............................................................................................... 11

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151 (9th Cir. 1996) .............................. 12

*Rieger v. Wells Fargo Bank*, No. 3:13-CV-00749 JSC, 2013 WL 3835815 (N.D. Cal. July 23, 2013) ........................................................................................................................ 12

*Seven Arts Filmed Entertainment Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251 (9th Cir. 2013) ............................................................................................................................ 9

*Sontag Chain Stores Co. Ltd. v. Nat'l Nut Co. of California*, 310 U.S. 281 (1940) ........................ 7

*Southerland v. Francis*, No. 12-CV-05110-LHK, 2013 WL 2558169 (N.D. Cal. June 10, 2013) ........................................................................................................................ 11

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001) .................................................. 6

*Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293 (9th Cir. 1998) ..................................................... 6

*Ubaldi v. SLM Corp.*, 852 F. Supp. 2d 1190 (N.D. Cal. 2012) ....................................................... 11

*Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136 (9th Cir. 2003) ........................................ 10

**STATE CASES**

*Abbott v. City of Los Angeles*, 50 Cal. 2d 438 (1958) .................................................................... 7

*Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal. App. 4th 151 (2001) .......... 12

*CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226 (2008) ................................................. 10

*Della Penna v. Toyota Motor Sales, USA., Inc*, 11 Cal. 4th 376 (1995) ....................................... 12

*Fed. Deposit Ins. Corp. v. Dintino*, 167 Cal. App. 4th 333 (2008) ................................................. 7

*Knoell v. Petrovich*, 76 Cal. App. 4th 164 (1999) .......................................................................... 7

*Wilson v. Loew's, Inc.*, 142 Cal. App. 2d 183 (1956) ................................................................... 13

*Youst v. Longo*, 43 Cal. 3d 64 (1987) ............................................................................................ 12

**STATUTES**

Cal. Code Civ. Proc. § 337 ............................................................................................................. 7

Cal. Code Civ. Proc. § 338 ............................................................................................................. 7

Cal. Code Civ. Proc. § 339 ............................................................................................................. 7

**RULES**

Fed. R. Civ. P. 8(a)(2) .................................................................................................................... 9

Fed. R. Civ. P. 12(b)(6) .................................................................................................................. 6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

At its core, this case involves the alleged breach of a 1999 "Controlling Access Settlement" agreement between Plaintiffs and Datum, a subsidiary of Defendant Symmetricom, Inc. ("Symmetricom"). Specifically, Plaintiffs claim that the 1999 Controlling Access Settlement divided up the parties' intellectual property—giving certain rights to Datum, while leaving certain rights (to "Phase II Technology") with the Plaintiffs. Plaintiffs further claim that Datum breached the 1999 Controlling Access Settlement when Datum obtained U.S. Patent No. 6,370,629—which issued in April 2002. The '629 Patent allegedly breached the Controlling Access Settlement by broadly claiming intellectual property rights to Phase II Technology—technology that supposedly belonged to Plaintiffs.

<u>The problem Plaintiffs now face is this</u>: they were well aware (or should have been well aware) that the '629 Patent allegedly claimed rights to Phase II Technology. This is because Plaintiffs themselves were *two of the four named inventors* on the face of the '629 Patent. Datum was just the assignee, as shown below:

```
(12) United States Patent                    (10) Patent No.:      US 6,370,629 B1
     Hastings et al.                         (45) Date of Patent:       Apr. 9, 2002

(54) CONTROLLING ACCESS TO STORED           5,640,452 A    6/1997  Murphy ................. 380/5
     INFORMATION BASED ON                    5,646,992 A    7/1997  Subler et al. .......... 380/4
     GEOGRAPHICAL LOCATION AND DATE          5,754,657 A    5/1998  Schipper et al. ........ 380/25
     AND TIME                                5,757,916 A    5/1998  MacDoran et al. ........ 380/25
                                             5,799,082 A  * 8/1998  Murphy et al. ........... 380/7
(75) Inventors: Thomas Mark Hastings, Lexington,  5,922,073 A  * 7/1999  Shimada ............... 713/200
                MA (US); Michael E. McNeil, Felton;  5,987,136 A  *11/1999  Schipper et al. ........ 380/25
                Todd S. Glassey, Scotts Valley, both of   6,046,689 A  * 4/2000  Newman ................ 340/996
                CA (US); Gerald L. Willett, Malden,     6,057,779 A  * 5/2000  Bates ............. 340/825.31
                MA (US)                         6,057,799 A  * 5/2000  Bates ............. 340/825.31

                                             * cited by examiner

(73) Assignee: Datum, Inc., Bedford, MA (US)  Primary Examiner—Than Nguyen
```

As a matter of law, the issuance a patent is constructive notice of the patent's claimed intellectual property to the world. In this case, Plaintiffs were no strangers to the '629 Patent; they were the *named inventors and should have known* what the '629 Patent claimed upon its issuance.

The statute of limitations in California for breach of a written contract—like the Controlling Access Settlement—is only 4 years. Because the '629 Patent was issued in April 2002, Plaintiffs had until April 2006 at the latest to bring their claims for breach. Plaintiffs filed much too late.

For example, Plaintiffs did not file their first lawsuit until October 2009, in the Santa Cruz Superior Court. That first state court action was for legal malpractice, against their attorney who advised them on the 1999 Controlling Access Settlement. Eventually, that state court action morphed into claims against Defendant Symmetricom. After litigating that state court matter for 4 years, in October 2013, Plaintiffs voluntarily dismissed that lawsuit and then brought the instant action in federal court. By any measure, the instant litigation was filed after the statute of limitations had already run.

In addition, Plaintiffs' five claims fail to state a claim upon which relief could be granted.

<u>Counts One, Two and Five</u>: Plaintiffs bring these breach of contract claims but fail to specify what provisions of the contract were allegedly breached by Symmetricom.

<u>Count Three</u>: Plaintiffs bring an unjust enrichment claim but California state and federal courts do not recognize it as an independent cause of action when a plaintiff also alleges an enforceable contract exists.

<u>Count Four</u>: Plaintiffs bring tortious interference claims, but fail to sufficiently plead a single required element to sustain this cause of action.

## II. **FACTUAL BACKGROUND**

Symmetricom provides this brief background to familiarize the court with the long history of this dispute. This case is merely the most recent reincarnation of a longstanding attempt by Plaintiffs to revisit their claims of an alleged breach of a contract referred to as the "Controlling Access Settlement."[1] Unless otherwise noted, Symmetricom recites these facts directly from the Plaintiffs' allegations in their Complaint.

---

[1] Capitalized terms not defined herein have the meaning ascribed to them in the Complaint, Dkt. No. 1.

**A.     Relationship Between The Parties**

      1.     <u>Digital Delivery, Inc. ("DDI") and Plaintiffs</u>

Beginning in 1997, Plaintiffs worked with DDI to enhance DDI's "Confidential Courier" technology with various aspects of Plaintiffs' time control technologies for commercialization. [Compl. ¶¶23-26] In July 1998, Plaintiffs and DDI decided to jointly pursue filing a "U.S. Patent application which would incorporate some of Plaintiffs' time control technology with some of DDI's existing Confidential Courier technology which was the subject matter of an existing U.S. Patent." [Compl. ¶27] The new patent application and subsequent patent were referred to as the "Controlling Access Patent." [Compl. ¶28]

In October 1998, Plaintiffs and DDI entered into an interim "Co-Inventor Agreement" to memorialize ownership rights and to define the parties' contribution to the Controlling Access Patent. [Compl. ¶¶29-34] Specifically, DDI would retain ownership of the Confidential Courier technology, ¶31, as well as a certain undefined portion of Plaintiffs' technology referred to as "GPS Phase II" with a license back to Plaintiffs. [Compl., Exh. C. pp. 2-3]

On October 29, 1998, DDI filed the Controlling Access Patent application referred to as the "1998 Patent Application." [Compl. ¶35 & Exh. D]

      2.     <u>Symmetricom, Datum, and Plaintiffs</u>

Around July 1999, DDI became a wholly owned subsidiary of Datum. [Compl. ¶36] Plaintiffs allegedly provided technical consulting services to Datum. [Compl. ¶¶19-22] In 2002, Symmetricom acquired Datum. [Compl. ¶3]

**B.     Alleged Breaches Of The 1999 Controlling Access Settlement By The '629 Patent, Which Issued In 2002**

      1.     <u>The Controlling Access Settlement</u>

In August 1999, Datum initiated a lawsuit against Plaintiffs. [Compl. ¶¶36-38] To settle the dispute, around November 1999, Datum and Plaintiffs entered into the contract that is the basis for the dispute in this litigation – the "Controlling Access Settlement." [Compl. ¶39 & Exh. E]

The Controlling Access Settlement became the "definitive" and *only* agreement setting forth the parties' rights with respect to the Controlling Access Patent, [Compl. ¶40], as well as to

1 "Phase II Technology," which at this point was allegedly an expansion of the GPS Phase II
2 Technology. [Compl. ¶¶42-43]

3 Specifically, Datum maintained the rights to the Controlling Access Patent and all foreign
4 patents, [Compl. ¶¶41, 44 & Exh. E (Section 2.2)], while Plaintiffs maintained the rights to Phase
5 II Technology and granted to Datum a license to use Phase II Technology covered by the
6 Controlling Access Patent. [¶¶45-46] The Controlling Access Settlement does *not* contain any
7 provision requiring Datum to maintain or protect the Controlling Access Patent or its foreign
8 counterparts. [Compl. Exh. E]

9         2.      <u>Datum's Alleged Breaches of the Controlling Access Settlement</u>

10 Around May 17, 2001, Datum received an Office Action from the United States Patent and
11 Trademark Office ("USPTO") in the Controlling Access Patent application. [*See* Compl. ¶56 &
12 Exh. F] On August 20, 2001, Datum submitted a response to the Office Action—the "2001 Patent
13 Application Rewrite"—clarifying the claim language from the originally filed Controlling Access
14 Patent application. [*Id.*] In their Complaint, Plaintiffs assert that ***all*** the independent claims in the
15 2001 Patent Application Rewrite "included vastly more of Plaintiffs' Phase II Technology than
16 they had ever agreed to license to Datum in the Controlling Access Settlement." [Compl. ¶¶58-
17 65]

18         3.      <u>Symmetricom, Datum, and the '629 Patent</u>

19 On April 9, 2002, the Controlling Access Patent issued as U.S. Patent No. 6,370,629 (the
20 "'629 patent"), with Datum listed as the sole assignee and Plaintiffs as two of the four named
21 inventors. [Compl. ¶66 & Exh. G]

22 Plaintiffs state that claims 12, 18, 21, 25, and 29 from the 2001 Application Rewrite were
23 issued verbatim as claims 11, 16, 19, 23, and 27 in the '629 patent. [Compl. ¶68]

24 ///
25 ///
26 ///
27 ///
28 ///

### C. The Plaintiffs Initiate State Court Proceedings In 2009[2]

In October of 2009, Plaintiffs filed their first complaint related to the Controlling Access Agreement, *McNeil et al., v. Symmetricom, Inc.*, Case No. CV-165643 (Cal. Sup. Ct. October 28, 2009). The initial complaint focused on allegations of legal malpractice against Plaintiffs' prior counsel who represented them in negotiating and executing the 1999 Controlling Access Agreement.

On May 21, 2010, Plaintiffs filed their First Amended Complaint ("FAC").[3] The FAC referenced foreign patent filings and "six global patent filings" by DDI. [RJN, Exh. 1 (FAC) at 27] Plaintiff alleged that an unauthorized portion of Phase II Technology was found in "the extra unauthorized claims in U.S. patent 6,370,629 contain (to wit, Claims 24-32)." [RJN, Exh. 1 (FAC) at 32; *see also id.* at 38 ("only Glassey and McNeil own specific claims #24 through #32 of the patent as issued because those claims were negotiated to remain solely with Glassey and McNeil").]

On January 7, 2011, Plaintiffs filed their Second Amended Complaint ("SAC"), dropping all other defendants and leaving Symmetricom as the sole defendant. On August 2, 2012, Plaintiffs filed a motion to amend or refile the SAC ("Motion to Amend SAC").[4] The Motion to Amend the SAC stated that the "filing resulting in the '629 patent was filed in numerous jurisdictions and the use of the term '629 then herein applies to all of them collectively (including but not limited to US, EU, Japan, Canada, Brazil, and South African filings which were disclosed

---

[2] Defendant Symmetricom presents a brief summary of the state court proceedings simply as background context for the Court. Although these facts need not be considered for the Court's disposition of this motion, the Court may take judicial notice. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) (providing that, when ruling on a motion to dismiss, a court may take judicial notice of matters of public record outside the pleadings and consider those matters when adjudicating the motion to dismiss).

[3] A true and correct copy of the FAC is attached as Exhibit 1 to Defendant's concurrently filed Request for Judicial Notice ("RJN")

[4] A true and correct copy of the Motion to Amend SAC is attached as Exhibit 2 to Defendant's concurrently filed RJN.

to Plaintiffs)" (emphasis added). [RJN, Exh. 2 (Motion to Amend SAC) at 5, ¶43]

After attempting to file a third amended complaint, Plaintiffs voluntarily dismissed all of their state court claims on October 7, 2013.

### D. The Federal Complaint

Plaintiffs filed this action on the same day they filed for dismissal of their state court action. Generally, the five Counts arise from an alleged breach of the Controlling Access Settlement. [Compl. ¶¶75-100]

## III. ARGUMENT

### A. Legal Standard

In considering a motion pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court assumes that the facts alleged in the complaint are true, except the court need not assume the validity of "allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). If the plaintiff is not entitled to any legal remedy, the court must grant the motion. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).

A court may also take judicial notice of matters of public record outside the pleadings. *See Mir*, 844 F.2d at 649 (providing that, when ruling on a motion to dismiss, a court may take judicial notice of matters of public record outside the pleadings and consider those matters when adjudicating the motion to dismiss); *see also Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986) (taking judicial notice of records in a state administrative proceeding and considered them in the motion to dismiss).

Finally, if amendment would be futile, the complaint should be dismissed with prejudice. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998).

### B. Plaintiffs' Claims Are Barred By The Applicable Statutes Of Limitations

Plaintiffs' claims must be dismissed under Fed. R. Civ. P. 12(b)(6) because they are time-barred by the statutes of limitations. Where the facts and dates alleged in the complaint indicate that a claim is barred by the statute of limitations or preempted, a motion to dismiss for failure to

state a claim under Rule 12(b)(6) lies. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 849 n.16 (9th Cir. 2004).

The longest statute of limitations period applicable to Plaintiffs' claims is <u>four</u> years:

- Counts One and Two allege breach of contract. The statute is <u>four</u> years (*see* Cal. Code Civ. Proc. § 337);

- Count Three alleges unjust enrichment grounded in mistake or fraud. The statute is <u>three</u> years (*see Fed. Deposit Ins. Corp. v. Dintino*, 167 Cal. App. 4th 333, 348 (2008) (citing Cal. Code Civ. Proc. § 338));

- Count Four alleges tortious interference with prospective economic advantage. The statute is <u>two</u> years (*Knoell v. Petrovich*, 76 Cal. App. 4th 164, 168 (1999) (citing Cal. Code Civ. Proc. § 339)).

- Count Five alleges declaratory judgment for breach of contract. The statute for declaratory relief tracks the underlying cause of action. (*See Abbott v. City of Los Angeles,* 50 Cal. 2d 438, 463 (1958) (a claim for declaratory relief will be subject to the same statute of limitations as the underlying cause of action that would give rise to "coercive" relief). Here, that is <u>four</u> years.

Generally speaking, a claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Lukovsky v. Cty. & Cnty. of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008). In the context of patent-related claims, the Supreme Court has held that upon issuance and recordation of a patent, "[c]onstructive notice of their existence goes thus to all the world." *Sontag Chain Stores Co. Ltd. v. Nat'l Nut Co. of California*, 310 U.S. 281, 295 (1940) (noting that one with such "implied knowledge" would be subject to the same privileges and obligations as "would follow actual knowledge"). The Ninth Circuit has similarly held that constructive knowledge will be imputed from a patent's issuance if a party "had enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of [the cause of action]." *Gen. Bedding Corp. v. Echevarria*, 947 F.2d 1395, 1398 (9th Cir. 1991).

In *IBM Corp.*, plaintiff IBM brought claims against its former employee, Zachariades, for breach of his employee invention agreement, fraud, and breach of his fiduciary duty for filing a

7

patent application for an invention he conceived during his employment with IBM. *IBM Corp. v. Zachariades*, No. C 91-20419-JW, 1993 WL 443409, at *2 (N.D. Cal. Oct. 27, 1993), *affirmed in relevant part by* 70 F.3d 1278 (9th Cir. 1995). This Court held that "[t]he issuance of a patent gives a plaintiff constructive notice of its claims if the patent reveals information sufficient to alert a reasonable person of the need to inquire further." [*Id.* at *2] This Court found that IBM was put on inquiry notice of its state-law ownership claims because the patent issued listing Zachariades as the inventor in a technology area related to his work at IBM. [*Id.* at *3] Thus, IBM's claims were barred because all of the operative information that IBM needed to discover its claims—the inventor's name, his original filing date, and the subject matter of the patent—were listed on the face of the patent, and printed in the USPTO's *Official Gazette* on the issue date. In an unpublished opinion, the Ninth Circuit affirmed this Court's judgment with respect to whether IBM's claims were barred by the constructive notice provided by the issuance of the patent. *IBM Corp. v. Zachariades*, 70 F.3d 1278 (9th Cir. 1995).

Here, Plaintiffs' Complaint shows that they had notice of the relevant facts giving rise to their claims for far longer than the California statutory limitations period applicable to each claim. Plaintiffs' claims are based on breach of the Controlling Access Settlement because of alleged unauthorized inclusion of a portion of the Phase II Technology in the '629 patent.[5] [Compl. ¶¶78, 83-84, 88-89, 94-95, 99] Plaintiffs admit that Symmetricom's alleged unauthorized use was apparent when the '629 patent issued in 2002, [Compl. ¶¶58-69], yet Plaintiffs did not file any action related to the Controlling Access Settlement until 2009, and even then that initial complaint was grounded in legal malpractice claims against Plaintiffs' former attorney.

---

[5] Count II alleges breach of contract "by allowing certain foreign patents covering Plaintiffs' Phase II Technology to lapse," [Compl. ¶84], yet the status of any alleged foreign patents were public and the time to allege breach has passed. In fact, Plaintiffs were well aware of any foreign patents. [RJN, Exh. 2 (Motion to Amend SAC) at 5, ¶43 (Plaintiffs list five foreign patents allegedly related to the '629 patent); *see also* Compl. ¶¶41, 44, 46 & Exh. E (Controlling Access Settlement Section 2.2 refers to foreign patents); RJN, Exh. 1 (FAC) at 27 (Plaintiffs reference foreign patent filings and "6 Global Patent filings" by DDI)].

Moreover, just like *IBM Corp* where notice of the claims started to accrue for breach when the patent issued, Plaintiffs had notice of their claims on April 9, 2002, when the '629 patent issued. Indeed, Plaintiffs *themselves* are listed as inventors—this clearly placed Plaintiffs on an even heightened inquiry notice requirement about the status and content of the '629 patent.

Furthermore, Plaintiffs admit that there had been disputes over ownership rights related to the Controlling Access Patent and Phase II Technology, which led to litigation in August 1999, [Compl. ¶38-39], and to the November 1999 Controlling Access Settlement governing the "parties' mutual . . . rights to the Controlling Access Patent," [Compl. ¶40]. Against this background, a reasonably diligent person would naturally have reviewed the '629 patent when it issued in 2002, which would have "reveal[ed] information sufficient to alert a reasonable person of the need to inquire further." *IBM Corp.*, 1993 WL 443409 at *2.

Because the limitations period began to run on at least the date of the patent's issuance—April 9, 2002—all of the claims are now time-barred and subject to dismissal for failure to state a claim upon which relief could be granted. At the latest, Plaintiffs should have brought their claims on April 9, 2006. Consequently, this Court should dismiss each of Plaintiffs' claims as a matter of law. *See Seven Arts Filmed Entertainment Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1253-54 (9th Cir. 2013) (holding that a statute-of-limitations defense, if apparent from the face of the complaint, may properly be raised in a motion to dismiss); *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) (same).

### C. All Of Plaintiffs' Causes Of Action Fail To State A Claim Upon Which Relief Can Be Granted And Should Be Dismissed

A pleading that states a claim for relief must contain a "statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The federal pleading duty is far from trivial. Merely incanting labels, legal conclusions, and the formulaic elements of a cause of action will not be sufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft*, 556 U.S. at 679. A claim's allegations must "possess enough heft" to show an entitlement to relief thus justifying that the

costly process of litigation continue. *Bell Atlantic Corp.*, 550 U.S. at 570. Moreover, pleaders must allege facts with sufficient particularity to move beyond the level of speculation. *Ashcroft*, 556 U.S. at 679. A court is not required to accept "legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994); *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

### 1. Counts One, Two and Five: Plaintiffs' Breach of Contract Claims

In California, "[a] cause of action for breach of contract requires proof of the following elements: (1) existence of a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008).

Here, Counts One and Five are based on Plaintiffs' breach of contract claims related to the alleged unauthorized inclusion of a portion of Phase II Technology in the '629 patent. Yet, Plaintiffs fail to specify what provisions of the Controlling Access Settlement were breached by Symmetricom.

Indeed, Plaintiffs point to different sets of claims in the '629 patent that allegedly include an unauthorized portion of Phase II Technology. Specifically, here Plaintiffs definitively claim that the 2001 Patent Application Rewrite "included vastly more of Plaintiffs' Phase II Technology than they had ever agreed to license to Datum in the Controlling Access Settlement," [Compl. ¶¶58-65], and point to claims 11, 16, 19, 23, and 27 of the '629 patent as evidence thereof. [Compl. ¶68] Yet, in the prior state court case, Plaintiffs repeatedly pointed to claims 24-32 as the "extra unauthorized claims" that were to "remain solely with" Plaintiffs. [*See* RJN, Exh. 1 (FAC) at 32 (Plaintiff state that Phase II Technology was found in "the extra unauthorized claims in U.S. patent 6,370,629 contain (to wit, Claims 24-32)"); *see also id* at 38 ("only Glassey and McNeil own specific claims #24 through #32 of the patent as issued because those claims were negotiated to remain solely with Glassey and McNeil").]

Finally, with respect to Count Two, Plaintiffs' Complaint does not point to a provision of the Controlling Access Settlement requiring Symmetricom to maintain any foreign patents and of

which was breached by Symmetricom. [Compl. ¶¶80-85] This is because the Controlling Access Settlement contains no such provision. [Compl., Exh. E]

Because Plaintiffs do not and cannot allege what terms of the Controlling Access Settlement were breached, this Court should dismiss the breach of contract claims. *See e.g.*, *McAfee v. Francis*, No. 11-CV-00821-LHK, 2011 WL 3293759, at *2 (N.D. Cal. Aug. 1, 2011) (dismissing breach of contract claim because plaintiffs failed to "specify the exact terms of the agreements that were allegedly breached"); *Mendoza v. Countrywide Home Loans, Inc.*, No. C-09-3648 SC, 2009 WL 4706350, at * 3 (N.D. Cal. Dec. 2, 2009) (same); *Nichols v. Greenpoint Mortgage Funding, Inc.,* No. 08-750-DOC, 2008 WL 3891126, at *4 (C.D. Cal. Aug. 19, 2008) (dismissing breach of contract claim where "[p]laintiff has failed to set forth any provisions of the Notes that were breached."); *Southerland v. Francis*, No. 12-CV-05110-LHK, 2013 WL 2558169 (N.D. Cal. June 10, 2013) (dismissing breach of contract claims where first amended complaint did not include "specific allegations as to breach").

### 2. Count Three: Plaintiffs' Unjust Enrichment Claim

Plaintiffs' unjust enrichment claim fails for two reasons.

First, this claim fails as a matter of law because California federal courts do not recognize an independent cause of action for unjust enrichment. *See Ubaldi v. SLM Corp.*, 852 F. Supp. 2d 1190, 1203 (N.D. Cal. 2012) ("under California law, there is no claim for unjust enrichment") (citing *Melchior v. New Line Productions, Inc.*, 106 Cal. App. 4th 779, 793 (2003)); *Hafiz v. Greenpoint Mortgage Funding,* 652 F. Supp. 2d 1039, 1049 (N.D. Cal. 2009) ("Unjust enrichment, also known as restitution, is not a theory of recovery but is instead a result thereof."); *In re Toyota Motor Corp. Un. Accel. Mktg., Sales Practices, & Prods. Liab. Litig*., 754 F. Supp. 2d 1145, 1193-94 (C.D. Cal. 2010) ("Simply put, there is no cause of action in California for unjust enrichment. Therefore, Plaintiffs' claim for unjust enrichment fails to state a claim for which relief may be granted.") (internal citations omitted). Accordingly, Plaintiffs' unjust enrichment claim should be dismissed with prejudice for this reason alone. *See e.g.*, *Ubaldi*, 852 F. Supp. 2d at 1203 (dismissing unjust enrichment claim with prejudice); *Low v. LinkedIn Corp.*,

11

SYMMETRICOM'S MOTION TO DISMISS
Case No. 3:13-cv-04662 (NC)

900 F. Supp. 2d 1010, 1031 (N.D. Cal. 2012) (same); *Rieger v. Wells Fargo Bank*, No. 3:13-CV-00749 JSC, 2013 WL 3835815, at *5 (N.D. Cal. July 23, 2013) (same).

Second, even if unjust enrichment was recognized as an independent claim, Plaintiffs' unjust enrichment claim would still fail because the parties allegedly entered into a binding agreement. [Compl. ¶¶87-89 (Controlling Access Settlement forms the basis for the unjust enrichment claim)] It is well-settled under California law that a party cannot maintain a quasi-contractual claim such as unjust enrichment when an enforceable contract exists that govern the rights of the parties with respect to the subject matter of a dispute. *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996) (under California law, "unjust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties."); *Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal. App. 4th 151, 172 (2001) ("[A]s a matter of law, a quasi-contract action for unjust enrichment does not lie where, as here, express binding agreements exist and define the parties' rights."). Accordingly, courts routinely dismiss unjust enrichment claims with prejudice when a valid, enforceable agreement exists between the parties that covers the same subject matter. *See e.g.*, *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 718 (N.D. Cal. 2011) (dismissing claim with prejudice because Rule 8 "does not allow a plaintiff invoking state law to assert an unjust enrichment claim while also alleging an express contract") (citing *Gerlinger v. Amazon.Com, Inc.*, 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004); *Cal. Med. Ass'n*, 94 Cal. App. 4th at 174.

### 3. Count Four: Plaintiffs' Tortious Interference Claim

Under California law, the elements of a cause of action for tortious interference with a prospective economic advantage are: (i) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (ii) defendant's knowledge of the relationship; (iii) intentional acts by the defendant designed to disrupt the relationship; (iv) actual disruption of the relationship; (v) economic harm to the plaintiff proximately caused by the acts of the defendant; and (v) conduct that was wrong by some legal measure other than the fact of interference itself. *Della Penna v. Toyota Motor Sales, USA., Inc*, 11 Cal. 4th 376, 379 n.l (1995); *Youst v. Longo,* 43 Cal. 3d 64, 71, n.6 (1987).

1  Plaintiffs' purported cause of action for tortious interference fails to allege any of these
2  requisite elements against Symmetricom. Plaintiffs have not alleged any existing economic
3  relationship with a third party with the probability of future economic benefit to Plaintiffs for
4  which Symmetricom had knowledge. [Compl. ¶¶90-97] Likewise, Plaintiffs cannot establish that
5  *but for* the alleged tortious interference, there was a reasonable probability that a contract or profit
6  would be obtained. *See Wilson v. Loew's, Inc.*, 142 Cal. App. 2d 183, 195-96 (1956) (dismissing
7  claim where complaint did not allege any pending negotiations or reasonable prospects for profit).

8  Furthermore, because Plaintiffs have not pled the existence of any third party relationship
9  with prospective licensees, they also do not satisfy the pleading requirements as to the claim
10 elements of Symmetricom's knowledge of such a relationship, intentional acts to disrupt such a
11 relationship, actual disruption of such a relation and resultant economic harm. [Compl. ¶¶90-97]
12 Additionally, Plaintiffs have also failed to allege that Symmetricom engaged in any conduct that
13 was wrong by some legal measure other than the fact of the alleged interference itself. [Compl.
14 ¶¶90-97]. The Court should dismiss Plaintiffs' tortious interference causes of action without leave
15 to amend.

16 **D. Dismissal Should Be With Prejudice As Amendment Would Be Futile**

17 Given the deficiencies outlined above, no amount of re-pleading could cure the
18 Complaint's defects. *See Duetsche v. Turner Corp.*, 324 F. 3d 692, 718 n.20 (9th Cir. 2003)
19 (noting that granting leave to amend is futile where the claim would be barred by the statute of
20 limitations). Where, as here, amendment would be futile, there is no need to prolong litigation and
21 the Complaint should be dismissed with prejudice. *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027,
22 1039 (9th Cir. 2002).

23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

## IV. CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint in its entirety for failure to state a cause of action. Because amendment would be futile the dismissal should be with prejudice.

Dated: January 29, 2014

Respectfully submitted,

LEE TRAN & LIANG LLP

By: */s/ Enoch H. Liang*
Enoch H. Liang
*Attorneys for Defendant*
*SYMMETRICOM, INC.*